# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALLEN ANCAR (#299054)**　　　　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**

**17-913-JWD-RLB**

**JAMES LEBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 2, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ALLEN ANCAR (#299054)**                                    **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                                    **17-913-JWD-RLB**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court the Motion for Summary Judgment filed on behalf of defendants James LeBlanc, Darryl Vannoy, Barrett Boeker, Ray Vittorio, Butch Browning, and Jimmy Guidry (R. Doc. 67). This Motion is not opposed.

*Pro se* plaintiff, Allen Ancar, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against the foregoing defendants alleging that he is being subjected unconstitutional conditions of confinement. The plaintiff's allegations are as follows:

On August 31, 2016, the plaintiff was transferred to the Falcon #2 dormitory at Camp D. Immediately upon transfer, the plaintiff observed unsanitary showering conditions in the form of clogged drainage resulting in the plaintiff being required to shower in standing water. On September 29, 2016, the plaintiff composed a letter to defendant Assistant Warden Barrett Boeker to inform him of the same. The plaintiff then spoke to defendant Boeker about the problem, and a few days later the drain was working properly. However, over the next day or two, the drain began to clog again.

On October 17, 2016, the plaintiff composed another letter to defendant Boeker, but defendant Boeker failed to respond. On November 27, 2016, the plaintiff sought medical care

for a fungal infection which he believes was caused by the unsanitary bathroom conditions. The plaintiff was prescribed tolnaftate powder and cream for athlete's feet and jock itch.

Defendant Boeker was replaced by defendant Ray Vittorio as the supervisor over Camp D in November or December of 2016. On December 14, 2016 the plaintiff composed a letter to defendant Vittorio regarding the unsanitary conditions in the shower area. The plaintiff did not receive a response, and he composed another letter on January 16, 2017 to which he also did not receive a response.

The shower drainage was not fixed, and the plaintiff again sought medical treatment due to the worsening condition of his fungal infection. The plaintiff was prescribed Amoxicillin and Clarithromycin. The plaintiff subsequently suffered from rashes on his thighs. An anti-fungal medication was prescribed.

The toilets leak when flushed, resulting in puddles of water near the toilets. The urinals also leak when flushed, causing puddles which smell of urine to form. The water is then tracked through the dormitory by the inmates. The pipes connecting the sinks and showers constantly leak requiring the inmates to sweep water out of the living areas. On one occasion, a pipe has burst.

Camp D is operating at 50% over capacity due to the addition of 32 inmates. Living space per inmate has been reduced to approximately 44 square feet. Due to the additional number of inmates, a room designed for activities such as letter writing, legal writing, and playing board games is now used for watching television. Due to the constant noise and traffic in this room, the plaintiff is relegated to doing many of the aforementioned activities in his cell space. During sporting events and movies, some inmates are required to stand or sit on the floor due to lack of adequate seating.

The ventilation ducts and windows are inoperable, and the only source of ventilation is an exhaust fan at the back of dorm which is inmate operated at will. Due to the poor ventilation, the plaintiff inhales foul odors and gases emanating from inmates defecating on nearby toilets. During the winter, the windows are covered in plastic and cannot be opened, causing dry nose and sickness to spread among the inmates.

The ratio of security personnel to inmates is 1 to 192, which causes plaintiff to fear the potential risk to health, safety, and life due to the inadequate camera system used in place of security personnel. The bathrooms are approximately 216 square feet and are meant to accommodate 96 inmates with only five toilets, four working shower heads, and six sinks which all have some sort of malfunction. The ventilation in the bathroom is also inoperable.

The bunk-beds are not safe, and are subject to moving, shaking, and potentially falling over. Due to the cramped living conditions, the plaintiff has run into neighboring bunk beds or the limbs of other inmates when getting up during the night to use the restroom.

Due to the lack of restroom facilities when working in the field, the plaintiff is required to relieve himself in the open in vegetation rows, ditches, or canals while the female guards are relieved of their post to visit a restroom facility. There are also no adequate handwashing facilities available.

Defendants now move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, and the following exhibits: Exhibit 1 – American Correctional Association Audits from 2016; Exhibit 2 – Camp D, Falcon Dorm 2 Maintenance/Inspection Logs from December 1, 2016 to June 1, 2017; Exhibit 3 – Camp D Health and Hospital Inspection records from 2008 to 2018; Exhibit 4 – Camp D State Fire Marshal Inspection Reports from 2010 to 2018; Exhibit 5 – Certified Medical Records of Plaintiff, Allen Ancar; Exhibit 6 – Affidavit of

Assistant Warden Barrett Boeker; and Exhibit 7 – Affidavit of Assistant Warden Ray Vittiorio. The plaintiff has not filed an opposition.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record that demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc*., *supra*, 477 U.S. at 248.  However, whereas summary judgment is appropriate when there is no genuine disputed issue as to any material fact, and the moving party is able to show that he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56, the moving party always bears the initial burden of showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).  This is done by informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  The nonmoving party is not required to respond to the motion until the movant has made the required showing in support thereof.  *Id*.  It is only after the movant has carried his burden of proof that the burden

shifts to the non-movant to show that the entry of summary judgment is not appropriate. *See Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In response to Plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiffs' claims. Specifically, the defendants contend that the plaintiffs' allegations are insufficient to establish that they violated the plaintiffs' constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the

official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1] Undertaking the qualified immunity analysis with respect to the plaintiffs' claims, the Court concludes that the defendants' Motion for Summary Judgment should be granted, in part.

The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). However, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter, supra,* 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). In applying this standard, the determinative question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *Farmer v.*

---

[1] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts' discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

*Brennan, supra*, 511 at 837.  Specifically, prison officials must be shown to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also must be shown to have drawn the inference.  *Id.*  While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.  Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.  *Wilson v. Seiter, supra*, 501 U.S. at 305.  Further, conclusory allegations are not sufficient, and a plaintiff must present facts to support what are otherwise broad and conclusory allegations of wrongdoing.  *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

With regards to the plaintiff's complaints of overcrowding, double-celling is constitutional, and overcrowding is not, by itself, a constitutional violation. *See Rhodes* v. *Chapman*, 452 U.S. 337, 348 ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care or sanitation."); *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004) (Overcrowding of persons in custody is not *per se* unconstitutional."); *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 858 (5th Cir. 1982) ("The [l]ack of space alone does not constitute cruel and unusual punishment, save perhaps the most aggravated circumstances.").  Moreover, there is no constitutional right to a single cell. *See, e.g.*, *Barber v. Quarterman*, 2010 WL 1417650 *9 (E.D. Tex.) (citing *Parker v. Currie*, 2010 WL 10924 (5th Cir. 2010) (inmate desired a single cell but was assigned to general population; no constitutional liberty interest infringed)).

As to the complained of odors worsened by the lack of adequate ventilation, the Constitution does not mandate comfortable prisons and "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Simply put, the Constitution does not afford protection against mere discomfort or inconvenience. *See Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). While the complained of odors may be unpleasant, such allegations do not constitute a constitutional violation. *See Farr v. Rodriguez,* 255 F. App'x. 925 (5th Cir. 2007) (claim of a "foul odor" caused by an inadequate ventilation system was an "inconvenience of prison life" which did not amount to the denial of the civilized measure of life's necessities or support an inference of deliberate indifference).

Turning to the plaintiff's complaints regarding the lack of temperature control, although exposure to extreme heat is actionable under certain circumstances, the plaintiff's allegations in this case fall short of what is required to establish a constitutional violation, particularly in the absence of any evidence of harm or medical complication. For example, in *Johnson v. Texas Board of Criminal Justice*, 281 F. App'x. 319 (5th Cir. 2008), the United States Court of Appeal for the Fifth Circuit upheld a dismissal, as frivolous, of an inmate plaintiff's claims, finding that his allegations regarding extreme heat were "not sufficient to state a constitutional claim" because although he alleged that temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times." *Id.* at 321. *See also Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (upholding summary judgment in favor of the defendants where the inmate plaintiff alleged that excessive heat at Camp J at LSP aggravated his medical condition but where he "failed to present medical evidence of any significance" to support that assertion); *Ventry v. Gusman*, 2012 WL

1405862, *7 (E.D. La. March 29, 2012) (dismissing as frivolous an inmate's claim regarding uncomfortably hot conditions of confinement where his allegations "[fell] short of what is required to establish a constitutional violation" and where his claim regarding the aggravation of his medical condition was "speculative at best"); *Clark v. Gusman*, 2012 WL 1825306, *6 (E.D. La. March 29, 2012) (same). Similarly, it has been held that purely conclusory allegations of excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional right. *See Johnson v. Thaler*, 1999 WL 1131941, *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiffs' conclusory "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate").

Nor has the plaintiff alleged exposure to the type of extremely cold conditions that have been deemed a denial of the minimal measure of life's necessities. *See Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (finding such a denial in light of the inmate's "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area"); *Alex* v. *Stalder,* 225 F. App'x 313, 314 (5th Cir. 2007) (reciting prisoner's nonfrivolous Eighth Amendment allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk").

Turning to the plaintiff's claim regarding the lack of toilet and hand washing facilities at the field line work sites, while prolonged denial of access to toilet facilities can obviously rise to

the level of a constitutional violation, denial of immediate access on one occasion does not. At most, the plaintiff alleged that he suffers generalized discomfort on occasion, which is insufficient to state an Eighth Amendment violation. *See Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir. 1989).

With regards to the plaintiff's allegations of an insufficient number of security personnel, the plaintiff has not alleged any increase in violence due to the alleged ratio of one security officer per 192 inmates. Nor does the plaintiff allege that he has been physically harmed in any manner due to the alleged lack of security personnel. The plaintiff merely alleges a speculative fear of a potential risk to health, safety, or life.

Nor do any of these complained of conditions considered together indicate an Eighth Amendment violation. In *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977) the Court concluded that conditions at LSP, consisting of insufficient cell space resulting in an inability to segregate dangerous prisoners, 270 stabbings, 20 deaths, easy inmate access to weapons, lack of security personnel to confiscate weapons, fire and safety hazards, sanitations problems including accumulation of sewage under the main kitchen and a serious rodent problem, lack of medical staff resulting in inmates administering treatments, unsanitary conditions, substandard equipment, and untrained unlicensed pharmacist, violated the constitution. *See also Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457 (5th Cir. 1983) (Plaintiff's statements that the defendant intentionally subjected him to a cold, rainy, roach-infested facility and furnished him with inoperative, scum-encrusted washing and toilet facilities sufficiently alleged a cause of action under the Eighth Amendment). Comparatively, the plaintiff's allegations fall far short of those deemed to be a totality of conditions that violate the Eighth Amendment.

The only allegations which state an Eighth Amendment claim are those regarding the standing water in the showers and other areas. The plaintiff has alleged an unsafe condition and that defendants Boeker and Vittorio were advised of the problem and took no steps to alleviate it. Plaintiff alleges that those conditions created a fungal infection, which worsened over time, and suffered from a rash on his thighs. (R. Doc. 1 at 9). Such allegations are sufficient to state a claim. *See Bruce v. Little,* 568 F. App'x. 283 (5th Cir. 2014).

The competent summary judgment evidence submitted by the defendants shows that prior to being transferred to Camp D, the plaintiff complained of heat rashes which he described as a "reoccurring problem." The plaintiff also deemed the fungal rashes to be recurrent. On November 27, 2017, the plaintiff complained of a "fungus problem" that has "been a reoccurring problem for about the past fifteen years." The plaintiff stated that he made need to see a "thermatologist" to "determine the root cause of this reoccurring problem." On February 2, 2017 the plaintiff again complained of a "reoccurring fungus problem for which I have been suffering with for well over a decade." *See* Defendant's Exhibit 5, p. 71-73, 177, 181, and 184.

Moreover, the defendants have submitted competent summary judgment evidence which shows that the conditions complained of the by plaintiff did not exist in the plaintiff's dormitory. The American Correctional Association Audit from 2016 notes that "The facility is well maintained and sanitation throughout is excellent." The Audit further notes that "Bathroom and showers are clean." *See* Defendants' Exhibit 1. The Camp D Health and Hospital Inspection records also do not reflect any of the conditions alleged by the plaintiff. The records provided by the defendants note only that on April 17, 2017 the fifth hand sink in Falcon 2 was not working. *See* Defendants' Exhibit 3, p. 87. The maintenance log documents work being completed, such as unclogging a toilet, as necessary. *See* Defendants' Exhibit 2.

While the documentary evidence leans heavily in favor of the defendants, the allegations of the plaintiff's Complaint are verified and are competent summary judgment evidence.[2] In resolving a motion for summary judgment, the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). As such, with regards to the plaintiff's claim asserted against defendants Boeker and Vittorio, that there was standing water in the shower, that they were aware of this condition, refused to take appropriate action, thereby resulting in specific injuries that plaintiff avers were caused by that failure, the defendants' Motion should be denied.

As to the plaintiff's claim regarding his informal complaints, the plaintiff is not constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless").

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over

---

[2] His complaint is verified as set forth in 28 U.S.C. § 1746, and thus it is competent summary judgment evidence. Fed. Rule Civ. P. 56(c)(1); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the averral under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346.

which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having recommended dismissal of the majority of plaintiff's claims and defendants over which the district court has original jurisdiction, the Court further recommends that the exercise of supplemental jurisdiction on any state law claims be declined.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motion for Summary Judgment (R. Doc. 67) be granted, in part, dismissing plaintiff's claims with prejudice except the plaintiff's claim asserted against defendants Boeker and Vittorio regarding standing water in the shower.  It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims and that this matter be referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on April 2, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**